No. 14-30210

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————

**UNITED STATES OF AMERICA**,
PLAINTIFF-APPELLEE,

v.

**JESUS PIMENTEL-LOPEZ**
DEFENDANT-APPELLANT.

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
D.C. NO. CR-13-24-BU-SEH

———————————

**UNITED STATES' PETITION FOR REHEARING EN BANC**

———————————

MICHAEL W. COTTER
United States Attorney

LEIF M. JOHNSON
Assistant U.S. Attorney
District of Montana
U.S. Courthouse
2601 Second Avenue North
Box 3200
Billings, MT 59101
Telephone: (406) 247-4630

Attorneys for Appellee

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................i

TABLE OF AUTHORITIES ...................................................ii

F.R.A.P. RULE 35 STATEMENT.........................................1

BACKGROUND ......................................................................2

ARGUMENT ...........................................................................7

    I.  The jury's verdict of "less than 50 grams" was an
        acquittal on higher amounts that did not contradict
        or preclude sentencing findings of more than 50
        grams......................................................................8

    II.  The rationale of Watts controls. ..............................11

    III.The panel's decision carries the potential for far-
        ranging implications for drug sentencing. ............15

CONCLUSION.......................................................................19

CERTIFICATE OF COMPLIANCE ...................................20

CERTIFICATE OF SERVICE .............................................21

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Estelle v. McGuire,*
   502 U.S. 62 (1991) ............................................................. 9

*Mitchell v Prunty,*
   107 F.3d 1337 (9th Cir. 1997) ................................... 6, 11

*Pepper v. United States,*
   562 U.S. 476 ................................................................ 16

*Santamaria v. Horsley,*
   133 F.3d 1242 (9th Cir. 1998) ......................................... 6

*United States v. Booker,*
   543 U.S. 220 (2005) ............................................... 12, 18

*United States v. Buckland,*
   289 F.3d 558 (9th Cir. 2002) .......................................... 8

*United States v. Duncan,*
   400 F.3d 1297 (11th Cir. 2005) ..................................... 14

*United States v. Farias,*
   469 F.3d 393 (5th Cir. 2006) ......................................... 13

*United States v. Florez,*
   447 F.3d 145 (2d Cir. 2006) ...................................... 2, 13

*United States v. Goodine,*
   326 F.3d 26 (1st Cir. 2003) ....................................... 6, 13

*United States v. Magallanez,*
   408 F.3d 672 (10th Cir. 2005) .......................... 2, 6, 13, 17

*United States v. Picanso,*
   333 F.3d 21 (1st Cir. 2003) .............................................................. 13

*United States v. Smith,*
   308 F.3d 726 (7th Cir. 2002) ...................................................... 6, 13

*United States v. Tucker,*
   404 U.S. 443 (1972) ........................................................................ 16

*United States v. Vaughn,*
   430 F.3d 518 (2d Cir. 2005) ............................................................ 13

*United States v. Watts,*
   519 U.S. 148 (1997) ............................................................. 1, 12, 16

*United States v. Webb,*
   545 F.3d 673 (8th Cir. 2008) ....................................................... 2, 13

*United States v. White,*
   551 F.3d 381 (6th Cir. 2008) .......................................................... 12

*United States v. Young,*
   609 F.3d 348 (4th Cir. 2010) ............................................... 2, 12, 17

*Webb,* 545 F.3d at 677 ......................................................................... 6

*Witte v. United States,*
   515 U.S. 389 (1995) ....................................................................... 12

## Statutes

18 U.S.C. § 3661 .................................................................................. 16

21 U.S.C. § 841(b)(1)(C) ...................................................................... 4

21 U.S.C. §§ 846 and 841(a)(1) ........................................................... 3

iii

## <u>Other Authorities</u>

Ninth Circuit Manual of Model
    Jury Instructions, Criminal § 9.16 ............................................2, 15

USSG § 3B1.1(c)........................................................................5

USSG §1B1.3................................................................16, 17

iv

# F.R.A.P. RULE 35 STATEMENT

The panel held that a jury's special verdict at trial—that the quantity of drugs attributable to Pimentel-Lopez for the crimes of conviction was "less than 50 grams"—precluded the trial court from finding additional amounts at sentencing by a preponderance of the evidence, including evidence that was not before the jury. *United States v. Pimentel-Lopez*, No. 14-30210, slip op. 4 (9th Cir. July 15, 2016).

The panel's erroneous holding warrants en banc review for several reasons. First, when read in the context of the trial record and the jury instructions as a whole, the jury's special verdict on drug amount was an acquittal on the higher drug amounts charged. Thus, the panel's decision runs contrary to the Supreme Court's decision in *United States v. Watts*, 519 U.S. 148, 157 (1997) (*per curium*) (a verdict of acquittal "does not prevent a sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proven by a preponderance of the evidence"). Second, it conflicts with every circuit that has considered the issue under directly analogous circumstances. *E.g., United States v.*

1

*Young*, 609 F.3d 348, 357-58, (4th Cir. 2010) (reversing district court that refused to make findings in excess of the jury's finding of 500 grams but less than five kilograms of cocaine); *United States v. Webb*, 545 F.3d 673, 675 (8th Cir. 2008) (affirming finding of 50-150 grams of cocaine base at sentencing despite jury finding beyond a reasonable doubt of "more than five but less than fifty grams"); *United States v. Florez*, 447 F.3d 145, 156 (2d Cir. 2006) (court found 10 to 30 kilos of heroin; jury found three to ten kilos); *and United States v. Magallanez*, 408 F.3d 672, 676 (10th Cir. 2005) (applying *Watts* and affirming sentencing finding of 1,200 grams despite special verdict of 50-100 grams).

Third, the panel's erroneous holding is of exceptional importance in this Circuit because it appears to implicate this Court's pattern verdict form, which also requires the jury to find, in the appropriate circumstances, "less than 50 grams." Ninth Circuit Manual of Model Jury Instructions, Criminal § 9.16 (Appx. C).

## BACKGROUND

Pimentel-Lopez was indicted for conspiracy to distribute methamphetamine and possession with intent to distribute

methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1).
Slip op. 4.  The indictment alleged that the crimes involved at least
500 grams of the drug.  ER 157-58.  The case went to trial, but
Pimentel-Lopez's key co-conspirator, Jesus Elizondo, refused to
testify.  Thus, although the government presented the 10.7 grams of
methamphetamine it seized in a search of Elizondo's home, ER 41,
49, its evidence of larger quantities at trial was not overwhelming,
ER 127 (Mallo testifying that Pimentel-Lopez delivered
methamphetamine valued at $200,000); ER 138 (Cleland testifying
that he received 1.5 pounds of methamphetamine from Pimentel-
Lopez).

After convicting Pimentel-Lopez on both counts, the jury was
instructed to determine "whether the government proved beyond a
reasonable doubt that the amount(s) of methamphetamine involved
in the conspiracy equaled or exceeded 500 grams of a substance
containing a detectable amount of methamphetamine."  Appx. B-22.
The jury was further instructed to determine the quantity of
methamphetamine attributable beyond a reasonable doubt to

3

Pimentel-Lopez, *ibid*, and to make a special finding of quantity from

the following three ranges:

> Having found Jesus Pimentel-Lopez guilty of the charge * * *
> we unanimously find beyond a reasonable doubt the amount of
> a substance containing a detectable amount of
> methamphetamine attributable to Jesus Pimentel-Lopez to be:
>
>    __x__ Less than 50 grams * * *
>
> _____50 grams or more, but less than 500 grams * * *
>
> _____500 grams or more * * *

Slip op. at 4. The jury checked "less than 50 grams" for both

counts. ER 154-55. That amount subjected Pimentel-Lopez to a

statutory maximum term of 20 years. *See* 21 U.S.C. § 841(b)(1)(C).

At sentencing, the case agent testified that Elizondo stated in

several interviews that he received 10 pounds (or 4.536 kilograms) of

methamphetamine from Pimentel-Lopez. ER 10-12. The court

credited this account, and found by a preponderance of the evidence

that Pimentel-Lopez was responsible for the entire amount. ER 12.

Based on that drug quantity, the court found an advisory guideline

sentencing range of 235-293 months, which was substantially higher

than the range applicable to a drug quantity determination of "less

than 50 grams." Slip op. 5 (describing the alternate range of 63-78

4

months).  Pimentel Lopez was sentenced to 240 months, the
statutory maximum term for a quantity of less than 50 grams.  *Id.*

On appeal, Pimentel-Lopez argued that the court's deviation
from the jury's drug quantity determination violated the Sixth
Amendment.  The panel held that the jury's beyond-a-reasonable-
doubt drug quantity determination bound the sentencing judge and
precluded sentencing findings of greater drug quantity.  Slip op. 9. [1]

As the panel read the verdict form, the jury fixed the "upper
limit of the quantity of illegal drugs involved in Pimentel-Lopez's
crimes," and in that circumstance, "the finding is binding."  Slip op.
7.  "This is not a case where the jury failed to find a fact under the
exacting standard applicable to criminal cases," the court observed,
"the jury made an affirmative finding, under the highest standard of
proof known to our law, that the amount of methamphetamine
attributable to defendant is less than 50 grams."  Slip op. 6.  It held
that the trial court could not "attribute more than that amount to

---

[1] Pimentel-Lopez raised, and prevailed on, a second issue that
is not raised here: that his two-level sentencing enhancement as an
organizer/leader under USSG § 3B1.1(c) was clearly erroneous.  Slip
op. 10.

Pimentel-Lopez without contradicting the jury on a fact it found as a result of its deliberations," a power the trial court does not possess. *Id.* In reaching that conclusion, the panel found the *Apprendi* line of cases "beside the point" because the problem with Pimentel-Lopez's sentence was not that it exceeded the statutory maximum, but that it "contradicted" the jury's "affirmative finding" on drug quantity. *Id.* It observed, "Special findings . . . are dispositive of the questions put to the jury." *Id., quoting Mitchell v Prunty*, 107 F.3d 1337, 1339 n.2 (9th Cir. 1997) (internal marks omitted), *overruled on other grounds, Santamaria v. Horsley*, 133 F.3d 1242, 1248 (9th Cir. 1998) (en banc).

In reaching its holding, the panel distinguished several cases from other circuits that held that a jury's special-verdict quantity finding does not preclude the judge from finding a greater quantity at sentencing. *See* slip op. 8 (citing *Webb*, 545 F.3d at 677; *Magallanez*, 408 F.3d at 685; *United States v. Goodine*, 326 F.3d 26, 33-34 (1st Cir. 2003); *and United States v. Smith*, 308 F.3d 726, 745-46 (7th Cir. 2002)). According to the panel, those cases "did not directly address the argument" that "the affirmative finding by the

6

jury that the quantity of drugs involved was less than a specific
amount" precluded a "contradictory finding" by the court. *Id*.

The panel also distinguished *Watts* as "inapplicable" where
there is "an affirmative finding that the amount in question is less
than a particular amount." *Id*. The court suggested that the agreed-
upon special verdict here may have been a "blunder" by the
government, and opined that a jury finding that "does not set an
upper boundary" would leave the court free to find a greater quantity
at sentencing. *Id*. at 10.

## ARGUMENT

The panel's decision fails to give fair meaning to the special
verdict form as the jury intended it in the context of the instructions
as a whole. It was an acquittal on the higher amounts that the
government alleged in the indictment and presented at trial. The
fact that the panel characterized the verdict as an "affirmative
finding" of "less than 50 grams" does nothing to remove this case
from the rationale of *Watts,* nor distinguish it from those cases in our
sister circuits where similarly capped, beyond-a-reasonable-doubt
drug quantity findings did not preclude judicial fact-finding of

greater amounts at sentencing.  In fact, this Court's own pattern

verdict form requires the same kind of finding of a capped amount.

Pursuant to F.R.A.P. 35, this Court should consider this issue en

banc to correct the panel's error and bring uniformity to the

treatment of this common issue.

I. **The jury's verdict of "less than 50 grams" was an acquittal on higher amounts that did not contradict or preclude sentencing findings of more than 50 grams.**

The district court here followed the procedure this Court set out

in *United States v. Buckland*:

> [I]n calculating sentences in drug cases, two separate findings
> of drug quantity must be made, one under the relevant statute,
> and then another under the Guidelines. *Apprendi* dictates that
> drug quantity under the statute must be found by the jury (in a
> jury case), but *Apprendi* does not alter the authority of the
> judge to sentence within the statutory range provided by
> Congress.  To determine where to fix the actual sentence to be
> imposed, the judge calculates quantity under the Guidelines
> which in turn yields an offense level and a number of months
> for the sentence. If the sentence determined by the Guidelines
> exceeds the statutory maximum on a given count, the sentence
> on that count, of course, is limited by that ceiling.

*United States v. Buckland,* 289 F.3d 558, 570 (9th Cir. 2002)

(en banc) (citations omitted).  It instructed the jury that the

government had charged Pimentel-Lopez with drug crimes involving

8

more than 500 grams of methamphetamine. Appx. B-16, B-23. It further charged the jury with deciding, in the first instance, "whether amount(s) of methamphetamine involved in the conspiracy equaled or exceeded 500 grams of a substance containing a detectable amount of methamphetamine." Appx. B-22, B-33. But in finally determining drug quantity per the court's instructions, the jury was asked to consider which of three levels the government proved beyond a reasonable doubt. Appx. B-46 ("Less than 50 grams of a substance containing a detectable amount of methamphetamine;" "50 grams or more, but less than 500 grams;" "500 grams or more . . .").

To understand the jury's intent in checking "less than 50 grams," the panel should have viewed the verdict form in the broader context of the instructions and record as a whole.[2] *See e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (explaining that in reviewing for instructional error, "the instruction may not be judged in artificial

---

[2] The jury was instructed, "In following my instructions, you must follow all of them, not single out some and ignore others." Appx. B-14.

isolation but must be considered in the context of the instructions as a whole and the trial record") (internal marks and citation omitted). When viewed in that context, there is no escaping that the jury acquitted on the 500-gram amount. The jury was asked to first consider whether the government proved beyond a reasonable doubt that the crimes involved more than 500 grams. Appx. B-22. That was what the government charged and attempted to prove at trial. By finding "less than 50 grams" on the verdict form," the jury necessarily acquitted on that 500-gram charge before reaching the lesser amount.

The panel chose instead to read the jury's final determination of quantity in isolation. It gave preclusive effect to the jury's "affirmative" conclusion that "we unanimously find beyond a reasonable doubt the amount [of drugs] attributable to . . . Pimentel-Lopez to be . . . less than 50 grams." ER 46. The crux of its reasoning was the syntactical point that a judge finding of more than 50 grams always contradicts a jury finding of less than 50 grams. Slip op. 6. ("District judges have many powers, but contradicting juries as to findings of facts they have been asked to make is not

10

among them."). That literalism is misplaced here because it says nothing about what the jury was asked to do.

As the panel noted, "special findings . . . are dispositive of the questions put to the jury." *Id*. (quoting *Mitchell*, 107 F.3d at 1339 n.2) (internal marks omitted). But the jury here was not charged with finding beyond a reasonable doubt what the government *did not* prove; that is, whether it was beyond doubt that the government could prove no more. There would be no reason for the jury to address that question because it had no bearing on the outcome of the case. Moreover, when the jury found beyond a reasonable doubt "less than 50 grams," it said nothing about what it may or may not have found by a preponderance of the evidence. Read in this broader context, there was no conflict here—the jury's finding of "guilt" on the lesser quantity was not an affirmative finding of innocence on greater quantities.

## II. The rationale of Watts controls.

If the jury's verdict in this case can be fairly construed as an acquittal on higher amounts, then, as the panel concedes, the rationale of *Watts* controls. *See* slip op 9. *Watts* held that "a jury's

11

verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Watts,* 519 U.S. at 157. The rationale of *Watts* is that an acquittal establishes only that certain facts were not proved beyond a reasonable doubt, whereas at sentencing, a court is free to consider facts proven by a preponderance of the evidence. *See United States v. Booker*, 543 U.S. 220, 251 (2005) ("a sentencing judge [can] rely for sentencing purposes upon a fact that a jury had found unproved (beyond a reasonable doubt)") (citing *Watts*); *see also United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) (en banc) (rejecting notion that a defendant sentenced on the basis of acquitted conduct is sentenced for a crime he did not commit); *Witte v. United States*, 515 U.S. 389, 397 (1995) (court could consider uncharged cocaine offenses in sentencing defendant on marijuana charges).

When faced with special verdicts like the one here, other courts have found, consistent with the rationale of *Watts*, that a jury's drug quantity determination does not bind a sentencing judge. *See Young*, 609 F.3d at 352, 356-57. (4th Cir. 2010) (a verdict of "at least 500

12

grams but less than five kilograms" of cocaine "effectively acquitted" the defendant of a higher quantity); *Webb,* 545 F.3d at 677 (allowing sentencing finding of more than 50 grams of crack, even though jury found beyond a reasonable doubt less than 50 grams); *Florez*, 447 F.3d 145, 156 (2d Cir. 2006) (sentencing in excess of a capped jury finding); *Magallanez*, 408 F.3d at 683-85 (choosing from three ranges on a verdict form does not bind the sentencing court); *United States v. Picanso*, 333 F.3d 21, 25 (1st Cir. 2003)  (despite a jury verdict of "at least 500 grams but less than 5 kilograms" of cocaine "the district judge is not only free to make his own independent finding but is essentially obligated to do so"); *Goodine*, 326 F.3d at 27, 32-33 (1st Cir. 2003) (finding of "at least five, but less than 50 grams" of crack did not preclude judge from finding him responsible for 309 grams); *Smith*, 308 F.3d at 745-46 (rejecting argument that verdict of "less than 50 kilograms" precluded court from sentencing based on 100 kilograms).[3]

---

[3] *See also United States v. Farias*, 469 F.3d 393, 399-400 (5th Cir. 2006) ("district courts must still determine sentencing facts by a preponderance of the evidence, even facts contradicting jury findings"); *United States v. Vaughn*, 430 F.3d 518, 527 (2d Cir. 2005) ("there is no logical inconsistency in determining that a

The panel here chose a different path.  But it is not enough to dismiss this tide of contrary authority by pointing out, as the panel does, that "we have an affirmative finding that the amount in question is less than a particular amount."  Slip op. 8.  In each of the foregoing cases, the jury made such a finding.  Nor should it be enough to distinguish those cases by noting that they "did not directly address the argument raised by Pimentel-Lopez . . . ."  *Id.* While those cases may not have examined the same linguistic formulation of the argument forwarded here, the defendants were trying to preclude the court from making sentencing findings in excess of an amount capped by the jury's verdict.  And until now, every court to have considered that question has concluded that there is no inherent contradiction between the jury's verdict on drug quantity and the court's sentencing findings within the statutory range.

---

preponderance of the evidence supports a finding about which there remains a reasonable doubt"); *United States v. Duncan*, 400 F.3d 1297, 1303-05 (11th Cir. 2005) (jury's special verdict that conspiracy involved only powder cocaine did not preclude the district court from sentencing defendant upon finding that his offense involved 12.24 kilograms of crack).

### III. The panel's decision carries the potential for far-ranging implications for drug sentencing.

This Court's pattern verdict form for determining drug quantity arguably raises the same issue presented here. In pertinent part, it states:

> We, the Jury, having found the defendant guilty of the offense charged in [Count_____ of] the indictment, further unanimously find that [he] . . . [possessed with intent to distribute] . . . in the amount shown (place an X in the appropriate box):
> [A mixture and/or substance with a detectible amount of Methamphetamine–
>
> (i) Weighing 500 grams or more [ ]
>
> (ii) Weighing at least 50 grams but less than 500 grams [ ]
>
> (iii) Weighing less than 50 grams [ ]

Ninth Circuit Manual of Model Jury Instructions, Criminal § 9.16 (Appx. C). Cases using that form, like this one, could result in "an affirmative finding that the amount in question is less than a particular amount," slip op. 8, such as, "We, the Jury, . . . unanimously find that [the defendant] possessed with intent to distribute . . . [methamphetamine] weighing less than 50 grams." Under the panel's reasoning, the district courts in those cases could be precluded from making "contradictory" findings of fact. But that

15

would run counter to the district court's well-established role at sentencing.

Congress has "expressly preserved the traditional discretion of sentencing courts to conduct an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come." *Pepper v. United States*, 562 U.S. 476, 488 (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972) (internal marks omitted). Congress has codified the "longstanding principle that sentencing courts have broad discretion to consider various kinds of information" at 18 U.S.C. § 3661. *Watts*, 519 U.S. at 151.

Under the Sentencing Guidelines, courts are required to consider "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured or willfully caused by the defendant," and, in the case of jointly undertaken criminal activity, "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." USSG §1B1.3. The commentary expressly states that "[t]he principles and limits of sentencing accountability under this guideline are not

16

always the same as the principles and limits of criminal liability."
USSG §1B1.3 comment. (emphasis added). And with respect to drug
amounts, the commentary requires the district court to find "all
reasonably foreseeable quantities of contraband that were within the
scope of the criminal activity that he jointly undertook." *Id*.

The court in *Young* addressed this very issue. It rejected the
idea that "the government was estopped from establishing a higher
drug quantity at sentencing" than it proved at trial, for at
sentencing, the government may introduce additional evidence to
establish a broader range of "relevant conduct." *Young,* 609 F.3d at
357-58. Further, the government was not required to produce all its
relevant-conduct evidence at trial, nor was the court, by the same
token, bound by the trial evidence in determining drug quantity or
relevant conduct. *Id*. at 358; see also *Magallanez*, 408 F.3d at 684
(sentencing court may consider broader context of defendant's
conduct, even if its view "conflict[s] with the jury's verdict").

Here, the district court did exactly what the Sentencing
Guidelines required it to do. It considered the hearsay testimony of
Elizondo, who told officers that Pimentel-Lopez brought ten pounds

17

of methamphetamine to sell in Butte.  ER 10.  That hearsay was corroborated by the trial testimony of Heather Mallo, ER 127, and Calvin Cleland, ER 138.  And while the jurors may have found beyond a reasonable doubt that the amount of drugs attributable to Pimentel-Lopez was "less than 50 grams," they did not hear from Elizondo.  Thus, it would be logical to view the district court's sentencing findings as not contradictory at all.  Of the ten pounds the government could prove by a preponderance of the evidence, only the 10.7 grams of drugs actually seized could be attributed to Pimentel-Lopez beyond a reasonable doubt.

Such a finding does no offense to the Sixth Amendment because it reaffirms the "strong connection between the sentence imposed and the offender's real conduct—a connection important to the increased uniformity of sentencing that Congress intended its Guidelines system to achieve." *Booker*, 543 U.S. at 246.

## CONCLUSION

This Court should grant the petition for rehearing en banc.

DATED this 12th day of October, 2016.

Respectfully submitted,

MICHAEL W. COTTER
United States Attorney

/s/ Leif M. Johnson

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the attached answering brief is proportionately spaced, has a typeface of 14 points or more, and the body of the brief contains 3,545 words.

DATED: October 12, 2016

/s/ Leif M. Johnson
LEIF M. JOHNSON
Assistant United States
Attorney
Attorney for Plaintiff/Appellee

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Leif M. Johnson
LEIF M. JOHNSON
Assistant United States Attorney

**Form 11.       Certificate of Compliance Pursuant to
                       Circuit Rules 35-4 and 40-1**

---

**Form Must be Signed by Attorney or Unrepresented Litigant
and Attached to the Back of Each Copy of the Petition or Answer**

---

**(signature block below)**

---

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/answer is: (check applicable option)

  X
____       Proportionately spaced, has a typeface of 14 points or more and contains ___3,545___ words (petitions and answers must not exceed 4,200 words).

**or**

____       Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text (petitions and answers must not exceed 4,200 words or 390 lines of text).

**or**

____       In compliance with Fed. R. App. 32(c) and does not exceed 15 pages.

 

                        ___/s/ Leif M. Johnson_____
                        Signature of Attorney or
                        Unrepresented Litigant

**(New Form 7/1/2000)**

No. 14-30210


IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____


UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE,


v.


JESUS PIMENTEL-LOPEZ,
DEFENDANT-APPELLANT.
_____


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
D.C. NO. CR-13-24-BU-SEH
_____


**APPENDIX**


_____


MICHAEL W. COTTER
United States Attorney

LEIF M. JOHNSON
Assistant U.S. Attorney
District of Montana
U.S. Courthouse
2601 Second Avenue North
Box 3200
Billings, MT 59101
Telephone: (406) 247-4630

Attorneys for Appellee

# TABLE OF CONTENTS

United States v. Jesus Pimentel-Lopez
 Court of Appeals No. 14-30210
 (9th Cir. July 15, 2016)......................................................Appendix A, 1-13

United State v. Jesuse Pimentel-Lopez
 D.C. No. CR 13-24-BU-SEH
 Jury Instructions...............................................................Appendix B, 1-47

Ninth Circuit Manual of Model Jury Instructions,
 Criminal § 9.16 ................................................................Appendix C, 1-2

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>v.<br><br>JESUS PIMENTEL-LOPEZ,<br>*Defendant-Appellant.* | No. 14-30210<br><br>D.C. No.<br>2:13-cr-00024-SEH-1<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, Senior District Judge, Presiding

Argued and Submitted October 15, 2015
Seattle, Washington

Filed July 15, 2016

Before:  Alex Kozinski, William A. Fletcher
and Raymond C. Fisher, Circuit Judges.

Opinion by Judge Kozinski

## SUMMARY[*]

### Criminal Law

The panel vacated a sentence and remanded for resentencing in a case in which the jury made a special finding that the quantity of drugs involved was less than 50 grams, but the district judge calculated the sentence based on his own finding that the quantity involved was far in excess of 50 grams.

The panel wrote that the *Apprendi v. New Jersey* line of cases is beside the point because the defendant is not complaining that the district court raised the maximum statutory sentence, and that this is not a case where the jury failed to find a fact under the exacting standard applicable to criminal cases. The panel explained that this is a case where the jury made an affirmative finding after deliberations, under the highest standard of proof, that the amount of methamphetamine attributable to the defendant is less than 50 grams. The panel held that district judges do not have the power to contradict the jury's finding under these circumstances. The panel remanded with instructions that the defendant be resentenced on the premise that the quantity of drugs involved in his crimes was less than 50 grams.

The panel held that because two witness's hearsay statements did not meet the "minimal indicia of reliability" standard, the district court was not justified in relying on them in determining the sentence. Because absent these

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

statements, there is no evidence that the defendant exercised some control over others involved in the commission of the evidence, the panel held that the district court clearly erred in assessing an organizer enhancement pursuant to U.S.S.G. § 3B1.1(c).

## COUNSEL

Timothy M. Bechtold (argued), Bechtold Law Firm, PLLC, Missoula, Montana, for Defendant-Appellant.

Zeno B. Baucus (argued) and Michael S. Lahr, Assistant United States Attorneys; Michael W. Cotter, United States Attorney; United States Attorney's Office, Helena, Montana; for Plaintiff-Appellee.

## OPINION

KOZINSKI, Circuit Judge:

The jury in defendant's criminal case made a special finding that the quantity of drugs involved was "less than 50 grams." We consider whether the district judge may nevertheless calculate defendant's sentence based on the judge's finding that the quantity involved was far in excess of 50 grams.

## FACTS

Defendant was convicted of possession of methamphetamine with intent to distribute and conspiracy to possess with intent to distribute, in violation of 21 U.S.C.

Case: 14-30210, 09/12/2016, ID: 10109355, DktEntry: 33-1, Page 4 of 13

4        UNITED STATES V. PIMENTEL-LOPEZ

§§ 841(a)(1) and 846. The punishment for both of these crimes is determined by section 841(b), which sets differential punishments, depending on drug type and quantity. If the quantity involved is less than 50 grams or an indeterminate amount, then the maximum sentence is 20 years. § 841(b)(1)(C). The statute sets higher minimum and maximum sentences for larger drug quantities. § 841(b)(1)(A)–(B).

With the consent of both parties, the court gave the jury a verdict form, which it filled out as follows:



> Having found Jesus Pimentel-Lopez guilty of the charge . . . we unanimously find beyond a reasonable doubt the amount of a substance containing a detectable amount of methamphetamine attributable to Jesus Pimentel-Lopez to be:
>
> __x__ Less than 50 grams of a substance containing a detectable amount of methamphetamine.
>
> _____ 50 grams or more, but less than 500 grams, of a substance containing a detectable amount of methamphetamine.
>
> _____ 500 grams or more of a substance containing a detectable amount of methamphetamine.

At sentencing, the district judge found that the actual quantity attributable to defendant's crimes was 4.536 kg,

which yielded a Sentencing Guidelines range of 235 to 293 months.[1]   The judge then sentenced defendant to 240 months—the statutory maximum sentence for a quantity of less than 50 grams.  § 841(b)(1)(C).  Had the court been bound by the jury's determination that the quantity attributable to Pimentel-Lopez was less than 50 grams, the sentencing range would have been 63–78 months.[2]   The court's 240-month sentence would then have represented a substantial upward departure.

## ANALYSIS

### I

The principal question presented is whether the district judge was entitled to make a drug quantity finding in excess of that found by the jury in its special verdict.  The district court believed it was entitled to do so because "[t]here is no increase in the statutory maximum sentence beyond the 20 years or 240 months that is charged in the [i]ndictment."

In reaching its conclusion, the district court relied on *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), and its

---

[1] Under the then-applicable Sentencing Guidelines section 2D1.1(c) the offense level for possessing at least 1.5 kg but less than 5 kg of methamphetamine was 34.   The court also assessed a two-level enhancement under Guidelines section 3B1.1(b) upon finding that Pimentel-Lopez was an organizer of the conspiracy.  The corresponding sentencing range for a net offense level of 36 and a criminal history category of III was 235 to 293 months.  *See* U.S.S.G., ch. 5, pt. A (Nov. 2013).

[2] Assuming a level 24 offense under section 2D1.1(c), a criminal history category of III and no organizer enhancement.  *See* U.S.S.G., ch. 5, pt. A.

Case: 14-30210, 07/12/2016, ID: 10056355, DktEntry: 33-1, Page 6 of 13

6          UNITED STATES V. PIMENTEL-LOPEZ

progeny, which leave it up to the district judge to find any facts bearing on sentencing, other than those that would increase the statutory sentencing range. *See, e.g.*, *Alleyne* v. *United States*, 133 S. Ct. 2151, 2163 (2013); *Apprendi*, 530 U.S. at 481. But the *Apprendi* line of cases is beside the point, because defendant is not complaining that the district court raised the maximum statutory sentence. Rather, he argues that the court's finding that the drug quantity found was *more* than 50 grams contradicts the jury's special finding that the drug quantity was *less* than 50 grams. The jury found "beyond a reasonable doubt [that] the amount of [methamphetamine] attributable to Jesus Pimentel-Lopez [is] . . . [l]ess than 50 grams." This is not a case where the jury failed to find a fact under the exacting standard applicable to criminal cases. *See, e.g.*, *United States* v. *Watts*, 519 U.S. 148, 157 (1997) (per curiam). Where this happens, the district judge is free to find the same fact under a less stringent standard of proof. *Id.* Rather, what we have here is a case where the jury made an affirmative finding, under the highest standard of proof known to our law, that the amount of methamphetamine attributable to defendant is less than 50 grams. The district court cannot attribute more than that amount to defendant without contradicting the jury on a fact it found as a result of its deliberations. District judges have many powers, but contradicting juries as to findings of facts they have been asked to make is not among them.

In reaching the contrary conclusion, the district judge overlooked our caselaw on point. In *Mitchell* v. *Prunty*, 107 F.3d 1337, 1339 n.2 (9th Cir. 1997), *overruled on other grounds by Santamaria* v. *Horsley*, 133 F.3d 1242, 1248 (9th Cir. 1998) (en banc), we noted as follows: "Special findings . . . are dispositive of the questions put to the jury. Having agreed to the questions, the government cannot now ask us to

ignore the answers; to do so would be a clear violation of petitioner's Sixth Amendment rights."

The precise issue presented in *Mitchell* differed slightly from that presented here, but the difference actually makes ours an easier case. In *Mitchell* we considered whether there was sufficient evidence to convict petitioner of murder when the only evidence of his involvement was one witness's testimony that he drove the car that ran over the victim's body. *Id.* at 1342. We concluded that there was insufficient evidence to support the verdict because the jury had elsewhere made a special finding that petitioner "was not the driver of the car which drove over" the victim. *Id.*

In its petition for rehearing, the state asked us to ignore the special finding as a case of inconsistent verdicts. *Id.* at 1339 n.2. We treated the special finding as binding even on the jury itself. *Id.* The special finding must also be binding on the parties and the court.

In our case, the jury was asked to find the upper limit of the quantity of illegal drugs involved in Pimentel-Lopez's crimes, and it did just that: "[T]he amount of [methamphetamine] attributable to Jesus Pimentel-Lopez [is] . . . [l]ess than 50 grams." This was not a gratuitous finding added by the jury of its own accord as in *Floyd* v. *Laws*, 929 F.2d 1390, 1397 (9th Cir. 1991). The parties presented evidence on point and the jury was instructed that this was a permissible finding. In such circumstances, the finding is binding, no matter how inconvenient it may be in subsequent proceedings.

Some of our sister circuits seem to have held that a jury's special-verdict finding that the quantity of drugs involved in

the crime is less than a particular amount did not preclude the
judge from finding a greater quantity for purposes of
sentencing. *See United States* v. *Webb*, 545 F.3d 673, 677
(8th Cir. 2008); *United States* v. *Magallanez*, 408 F.3d 672,
685 (10th Cir. 2005); *United States* v. *Goodine*, 326 F.3d 26,
33–34 (1st Cir. 2003); *United States* v. *Smith*, 308 F.3d 726,
745–46 (7th Cir. 2002). But those cases did not directly
address the argument raised by Pimentel-Lopez—that the
affirmative finding by the jury that the quantity of drugs
involved was less than a specific amount precluded a
contradictory finding by the district judge during sentencing.

All four cases held that the district court's sentencing did
not violate the *Apprendi* line of cases. But, as explained
above, *Apprendi* has no bearing on our analysis. In addition,
the other circuits addressed the drug quantity finding only in
passing, while emphasizing the less demanding
preponderance-of-the-evidence standard governing judicial
factfinding at sentencing. *See Webb*, 545 F.3d at 676–77;
*Smith*, 308 F.3d at 745–46. They therefore implicitly relied
on the holding of *Watts* to the effect that "a jury's verdict of
acquittal does not prevent the sentencing court from
considering conduct underlying the acquitted charge, so long
as that conduct has been proved by a preponderance of the
evidence." 519 U.S. at 157. The rationale of *Watts* is that
"[a]n acquittal can only be an acknowledgment that the
government failed to prove an essential element of the
offense beyond a reasonable doubt." *Id.* at 155 (quoting
*United States* v. *Putra*, 78 F.3d 1386, 1394 (9th Cir. 1996)
(Wallace, C.J., dissenting)). This rationale is inapplicable
where, as here, we have an affirmative finding that the
amount in question is less than a particular amount. Or, to
put it differently, there is no inconsistency between a jury's
acquittal as to a particular fact that had to be proved beyond

a reasonable doubt and a later finding that the same fact is proved by a preponderance of the evidence. But there *is* an inconsistency between a jury's finding that the amount is *less* than 50 grams and a later finding by the judge that the amount is *more* than 50 grams.

Some of our sister circuits seem to have assumed that the juries' findings merely acquitted defendants of possessing higher quantities of drugs, and that may have been warranted on the record before them. *See, e.g.*, *Magallanez*, 408 F.3d at 682 ("When we review a verdict where the jury did not find a *specific* amount of drugs attributable to the defendant, but a *range*, we only know that the jury found unanimously the amount at the bottom of the range."). Here, by contrast, the record is clear that the jury didn't merely acquit defendant of possessing 50 grams or more of methamphetamine; it made an affirmative finding "beyond a reasonable doubt" that the amount attributable to defendant was "[l]ess than 50 grams." Our own caselaw, and simple logic, precludes us from vouchsafing sentencing judges the power to make contradictory findings under these circumstances.

Our conclusion does raise a fair question: How is it possible to punish a defendant convicted of crimes involving less than 50 grams to the full statutory term of 240 months, when the Sentencing Guidelines cap the term available when the drug quantity involved is less than 50 grams at 125 months? In other words, does a jury's finding that the quantity of drugs falls in the 0 to 50 range always preclude a district judge from punishing the defendant for quantities in excess of 50 grams? The judge may, of course, depart upward from the sentencing range generated by the jury's findings. Also, where the jury makes no finding as to quantity or finds an unspecified amount, there would be no

10          UNITED STATES V. PIMENTEL-LOPEZ

inconsistency between the verdict and any quantity that the judge finds during sentencing. And any jury finding that does not set an upper boundary would leave the district court free to find a greater quantity in determining the sentencing range.

In our case, the government agreed to special verdict questions that set both a lower and an upper boundary for the amount of drugs involved. That may have been a blunder, but the jury answered the questions it was asked and so the die is cast: The government cannot disavow the finding that the jury makes as a result. 107 F.3d at 1339 n.2. Because the district court enhanced defendant's sentence based on its finding that more than 50 grams of a controlled substance were involved in defendant's crimes, we must vacate the sentence and remand with instructions that defendant be resentenced on the premise that the quantity of drugs involved in his crimes was less than 50 grams, as the jury found.

## II

The district court also applied a two-level enhancement under Guidelines section 3B1.1(c) upon finding that Pimentel-Lopez directed the behavior of his co-conspirators. Under section 3B1.1(c), "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity," courts are instructed to increase a defendant's offense by two levels. The application notes to section 3B1.1 clarify that "[t]o qualify for an adjustment . . . the defendant must have" either "been the organizer, leader, manager, or supervisor of one or more other participants" or must have "exercised management responsibility over the property, assets, or activities of a criminal organization." U.S.S.G. § 3B1.1 n.2.

"A court may impose this enhancement if there is evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime." *United States* v. *Whitney*, 673 F.3d 965, 975 (9th Cir. 2012) (internal quotation marks omitted). But "even a defendant with an important role in an offense cannot receive an enhancement unless there is also a showing that the defendant had control over others." *Id.* (internal quotation marks omitted).

The government introduced scant evidence that Pimentel-Lopez directed his co-conspirators. During Pimentel-Lopez's sentencing hearing, an agent testified that Jesus Elizondo—a co-conspirator who didn't testify—said that Pimentel-Lopez directed Elizondo's fiancée, Heather Mallo, and Mallo's sister, Elizabeth Gardiner, to rent a house "to be used . . . to distribute drugs." Mallo corroborated this allegation during a pre-trial police interview.[3] But when Mallo and Gardiner testified at Pimentel-Lopez's trial, neither mentioned that he directed them to rent a residence. Moreover, Gardiner testified that she couldn't even communicate with Pimentel-Lopez because she didn't speak Spanish. During an interview with the investigating agents and before entering his guilty plea, Elizondo declared that Pimentel-Lopez directed two individuals to deposit the proceeds of the drug sales into a bank account. But this statement was only corroborated by Mallo's pre-trial statements to the police, not by her trial testimony.

---

[3] To the extent that we refer here to facts contained exclusively in the presentence report, we pro tanto lift the order sealing that document.

12          UNITED STATES V. PIMENTEL-LOPEZ

"Generally, hearsay evidence . . . may be used in sentencing," but "we require that 'some minimal indicia of reliability accompany a hearsay statement.'" *United States* v. *Huckins*, 53 F.3d 276, 279 (9th Cir. 1995) (quoting *United States* v. *Petty*, 982 F.2d 1365, 1369 (9th Cir. 1993)). Elizondo's "statements were not made under oath, nor at trial where he could be cross-examined." *Id.* Furthermore, "a codefendant's confession inculpating the accused is inherently unreliable." *Lee* v. *Illinois*, 476 U.S. 530, 546 (1986). This "time-honored teaching" is equally applicable in the sentencing as in the conviction context. *See Huckins*, 53 F.3d at 279 (quoting *Lee*, 476 U.S. at 546).

"[E]xternal consistency" may demonstrate "the reliability of hearsay statements by co-defendants." *United States* v. *Berry*, 258 F.3d 971, 976 (9th Cir. 2001). "Specifically, hearsay statements by co-defendants that are consistent with each other may be deemed sufficiently reliable even if such statements are self-serving and contrary to the testimony of the defendant." *Id.* at 976–77. Here, Elizondo's statements were only corroborated by his fiancée, and even then only out of court. Gardiner's testimony that she couldn't communicate with Pimentel-Lopez casts further doubt on Elizondo's and Mallo's hearsay statements. In light of these facts, Elizondo's hearsay statements have not been "sufficiently corroborated . . . to provide the minimal indicia of reliability necessary to qualify the statements for consideration by the district court during sentencing." *Id.* at 977.

Because Elizondo's and Mallo's hearsay statements do not meet our "minimal indicia of reliability" standard, the district court was not justified in relying on them in determining Pimentel-Lopez's sentence. Absent these

statements, there is no evidence indicating that Pimentel-Lopez "exercised some control over others involved in the commission of the offense." *United States* v. *Yi*, 704 F.3d 800, 807 (9th Cir. 2013).  It was therefore clearly erroneous to assess the organizer enhancement.  *See id.*

\*          \*          \*

We **VACATE** Pimentel-Lopez's sentence and **REMAND** for resentencing.

Ladies and gentlemen: You are now the jury in this case, and I am going to take the next few minutes to talk with you about your duties as jurors and to provide you with some preliminary instructions on the law you are to follow in carrying out your duties. At the end of the trial I will give you more detailed instructions to use, along with these instructions, in your deliberations.

This is a criminal case brought by the United States government.  The government charges the Defendant with conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846, and possession with intent to distribute methamphetamine in violation of 21 U.S.C § 841(a)(1.

The charges against the Defendant are contained in the Indictment.  The Indictment is simply the description of the charges made by the government against the Defendant; it is not evidence of anything.

The Defendant has pled not guilty to the charges and is presumed innocent unless and until proved guilty beyond a reasonable doubt.  The Defendant has the right to remain silent and never has to prove innocence or present any evidence.

The evidence you are to consider in deciding what the facts are consists of:

* the sworn testimony of any witness;

* the exhibits which are received into evidence; and

* any facts to which the lawyers stipulate or agree.

You must not consider any of the following as evidence in deciding the facts of this case:

* statements and arguments of the lawyers;

* questions and objections of the lawyers;

* testimony that I instruct you to ignore or disregard;

* evidence that is excluded; and

* anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

**Appendix B - 4**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is indirect evidence, that is, it is proof of one or more facts from which one can find another fact.  You should consider both direct and circumstantial evidence.  The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

**Appendix B - 5**

Legal principles known as rules of evidence govern what can be received into evidence or into the record in a trial. If a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that the question is not proper and should not be answered or that the exhibit should not be admitted, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, or the exhibit cannot be received.  If I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.  If I sustain an objection to an exhibit, you must not guess or speculate about the substance or content of the exhibit.

**Appendix B - 6**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

* the opportunity and ability of the witness to see or hear or know the things testified to;

* the witness' memory;

* the witness' manner while testifying;

* the witness' interest in the outcome of the case and any bias or prejudice;

* whether other evidence contradicted the witness' testimony;

* the reasonableness of the witness' testimony in light of all the evidence; and

* any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**Appendix B - 7**

If you wish, you may take notes to help you remember what witnesses said. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you so that you do not hear other answers by witnesses. When you leave at the end of the day, your notes should be left in the jury room.

Whether or not you take notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by the notes.

**Appendix B - 8**

Until the trial is over:

You are not to communicate by any means or to discuss
this case with anyone, including your fellow jurors, members
of your family, people involved in the trial, or anyone
else, nor are you allowed to permit others to communicate
with you about the case or discuss the case with you.  If
anyone approaches you and tries to talk to you about the
case, please let me know about it immediately;

Do not provide any information to anyone by any means
about the case during the trial. Do not use any electronic
means, device or media, such as telephone, cell or smart
phone, e-mail, text message, computer, Blackberry, PDA,
Internet chat room, bulletin board, blog, or website, such
as Facebook, My Space, You Tube, Twitter, or any other
communication medium to communicate to anyone any
information about the case;

Do not read any news stories or articles appearing in
any medium or listen to any radio, television or other
communication medium reports about the case or about anyone
who has anything to do with it;

Do not do any research, such as consulting
dictionaries, searching the Internet, or using other
reference materials, and do not make any investigation about

**Appendix B - 9**

the case on your own;

If you need to communicate with me, simply give a
signed note to the clerk to give to me; and

Do not make up your mind about what the verdict should
be until after you have gone to the jury room to decide the
case and you and your fellow jurors have discussed the
evidence.  Keep an open mind until then.

At the end of the trial, you will have to make your decision based on what you recall of the evidence presented during the trial.  Additional evidence cannot be introduced once the evidence record is closed, and you will not have a transcript of the trial.  Therefore, I urge you to pay close attention to the testimony as it is given.

**Appendix B - 11**

The next phase of the trial will now begin. First, counsel for each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required, however, to make an opening statement.

The government will then present its evidence, and counsel for the Defendant may cross-examine the witnesses called by the government. The Defendant may then present evidence and counsel for the government may cross-examine the Defendant's witnesses.

When all the evidence has been presented, I will instruct you further on the law that applies to the case. The lawyers will then make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

We are about to take our first break during the trial. Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else, nor are you allowed to permit others to discuss the case with you.  This includes discussing the case in Internet chat rooms or through Internet blogs, Internet bulletin boards, emails or text messaging.  If anyone approaches you and tries to talk to you about the case, please let me know about it immediately. Do not read or listen to any news reports of the trial, including any online information. Finally, you are reminded to keep an open mind until all the evidence has been received and you have heard the arguments of counsel, the instructions of the court, and the views of your fellow jurors.

Members of the jury, you have heard all the evidence. The evidence record is closed.  Additional evidence will not be presented, and it is now my duty to further instruct you on the law that applies to this case.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others.  The order in which the instructions are given is of no significance. All of the instructions are equally important. You must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return; that is a matter entirely up to you.

**Appendix B - 14**

I remind you that the evidence you are to consider in reaching a verdict is limited to the witnesses testimony, any exhibits that were introduced, and any stipulations. The lawyers are not witnesses.  Statements made by the lawyers are not evidence and should not be considered as such by you.  A lawyer may not make any statement of fact or any argument about a fact that is not supported by evidence in the record.  Nor may a lawyer state his or her personal opinion as to matters in issue or about credibility of witnesses.  Any statement of a fact or any argument made by a lawyer at any time during the trial that is not supported by the evidence must be disregarded. Specifically, you may not consider as evidence any statement made by a lawyer during opening statement concerning potential witness testimony or other evidence that was not produced by testimony or evidence admitted later in trial.  Nor may you consider as evidence any statement by a lawyer during final argument that is not supported by the evidence.  All such statements must be disregarded.

**Appendix B - 15**

The Grand Jury has charged in Count I of the Indictment that beginning in or before July 2012, and continuing through at least February 2013, at Butte and other locations in the State and District of Montana, and elsewhere, the defendants, JESUS PIMENTEL-LOPEZ, JESUS E. ELIZONDO, JEFFREY B. LACKMAN, and CALVIN CLELAND, together with Timothy A. Gardiner and Elizabeth A. Gardiner, and with others both known and unknown to the Grand Jury, knowingly and unlawfully conspired and agreed to possess, with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), 500 or more grams of a substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846.

**Appendix B - 16**

Section 846 of Title 21 of the United States Code
provides:

Any person who attempts or conspires to commit any offense
defined in this subchapter [including possession with intent
to distribute methamphetamine] . . .[shall be guilty of an
offense against the laws of the United States].

Defendant Jesus Pimentel-Lopez is charged in Count I of the Indictment with conspiracy to possess with intent to distribute controlled substances in violation of Section 841(a) and Section 846 of Title 21 of the United States Code.  In order for the Defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning in or about July 2012 and ending on or about February 2013, there was an agreement between two or more persons to possess with the intent to distribute controlled substances; and

Second, the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

Methamphetamine is a controlled substance.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object or purpose of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy.

Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy,

**Appendix B - 19**

but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator.   Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

A conspiracy may continue for a long period of time and may include the performance of many transactions. It is not necessary that all members of the conspiracy join it at the same time, and one may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the names, identities, or locations of all of the other members.

Even though a defendant did not directly conspire with other conspirators in the overall scheme, the defendant has, in effect, agreed to participate in the conspiracy if the government proves each of the following beyond a reasonable doubt that:

(1) the defendant directly conspired with one or more conspirators to carry out at least one of the objects of the conspiracy;

(2) the defendant knew or had reason to know that other conspirators were involved with those with whom the defendant directly conspired; and

(3) the defendant had reason to believe that whatever benefits the defendant might get from the conspiracy were probably dependent upon the success of the entire venture.

It is not a defense that a person's participation in a conspiracy was minor or for a short period of time.

**Appendix B - 21**

If you find the defendant guilty of the charge in Count I of the indictment, you are then to determine whether the government proved beyond a reasonable doubt that the amount(s) of methamphetamine involved in the conspiracy equaled or exceeded 500 grams of a substance containing a detectable amount of methamphetamine.  Your determination of the amount(s) of a substance containing a detectable amount of methamphetamine must not include the weight of any packaging material.  Your decision as to the amount(s) of a substance containing a detectable amount of methamphetamine must be unanimous.

In determining the amount(s) of a substance containing a detectable amount of methamphetamine involved in the conspiracy, you should consider only the amount(s) of substance containing a detectable amount of methamphetamine that: (1) fell within the scope of the defendant's agreement with his coconspirators; or (2) was reasonably foreseeable to the defendant.

The government does not have to prove that the defendant knew the amount(s) of any substance(s) containing a detectable amount of methamphetamine.

The Grand Jury has charged in Count II of the Indictment that beginning in or before July 2012, and continuing through at least February 2013, at Butte and other locations in the State and District of Montana, and elsewhere, the defendants, JESUS PIMENTEL-LOPEZ, JESUS E. ELIZONDO, JEFFREY B. LACKMAN, and CALVIN C. CLELAND, knowingly possessed, with the intent to distribute, 500 or more grams of a substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).

Section 841(a)(1) of Title 21 of the United States Code provides:

[I]t shall be unlawful for any person knowingly or intentionally –

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

Methamphetamine is a controlled substance.

**Appendix B - 24**

Defendant Jesus Pimentel-Lopez is charged in Count II of the Indictment with possession of methamphetamine with intent to distribute in violation of Section 841(a)(1) of Title 21 of the United States Code.  In order for the Defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning in or about July 2012 and ending on or about February 2013, the defendant knowingly possessed methamphetamine; and

Second, the defendant possessed it with the intent to distribute it to another person.

**Appendix B - 25**

A person has possession of something if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it

More than one person can be in possession of something if each knows of its presence and has the power and intention to control it.

"To distribute" means to deliver or transfer possession of methamphetamine to another person, with or without any financial interest in that transaction.

To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of methamphetamine to another person, with or without any financial interest in the transaction.

An act is done knowingly if the defendant is aware of the act and does not act or fail to act through ignorance, mistake, or accident.  The government is not required to prove that the defendant knew that his acts or omissions were unlawful.  You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

A defendant may be found guilty of possession with intent to distribute methamphetamine, as alleged in Count II, even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission.   To prove a defendant guilty of aiding and abetting, the United States must prove beyond a reasonable doubt:

First, the crime of possession with intent to distribute methamphetamine was committed by someone;

Second, the defendant knowingly and intentionally aided, counseled, commanded, induced or procured that person to commit the crime of possession with intent to distribute methamphetamine; and

Third, the defendant acted before the crime was completed.

It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime.

The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit the crime of possession with intent to distribute methamphetamine.

**Appendix B - 30**

Each member of the conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy.  If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed that crime.

Therefore, you may find the defendant guilty of possession of methamphetamine with intent to distribute as charged in Count II of the indictment if the government has proved each of the following elements beyond a reasonable doubt:

First, a person named in Count II of the indictment committed the crime of possession of methamphetamine with intent to distribute as alleged in that count;

Second, the person was a member of the conspiracy charged in Count I of the indictment;

Third, the person committed the crime of possession of methamphetamine with intent to distribute in furtherance of the conspiracy;

Fourth, the defendant was a member of the same conspiracy at the time the offense charged in Count II was committed; and

Fifth, the offense fell within the scope of the

**Appendix B - 31**

unlawful agreement and could reasonably have been foreseen
to be a necessary or natural consequence of the unlawful
agreement.

If you find the defendant guilty of the charge in Count II of the Indictment, you are then to determine whether the government proved beyond a reasonable doubt that the amount(s) of methamphetamine involved equaled or exceeded 500 grams of a substance containing a detectable amount of methamphetamine.  Your determination of weight must not include the weight of any packaging material.  Your decision as to weight must be unanimous.

The Indictment charges that the offenses were committed within a certain period of time.  The proof need not establish with certainty the exact date of an alleged offense.  It is sufficient if the evidence establishes beyond a reasonable doubt that an offense was committed on a date reasonably near the time period alleged.

You have heard testimony from Jeffrey B. Lackman,
Calvin C. Cleland, Elizabeth A. Gardiner, and Timothy A.
Gardiner, witnesses:

For whom a request for reduction in sentence was made
or may be made by the government for having provided
assistance to the government; or

Who received or may receive benefits or favored
treatment from the government in connection with his or her
respective case; or

Who admitted being an accomplice to the crime charged.
An accomplice is one who voluntarily and intentionally joins
with another person in committing a crime; or

Who pleaded guilty to a crime arising out of the same
events for which the defendant is on trial. This guilty plea
is not evidence against the defendant, and you may consider
it only in determining the witness's believability.

For these reasons, in evaluating the testimony of each
and all of these witnesses, you should consider the extent

to which or whether his or her testimony may have been
influenced by any of these factors. In addition, you should
examine the testimony of each with greater caution than that
of other witnesses.

**Appendix B - 36**

The Defendant is on trial only for the crimes charged in the Indictment, not for any other activities.

A separate crime is charged against the defendant in each count.  You must decide each count separately.  Your verdict on one count should not control your verdict on any other count.

The Defendant has a constitutional right not to testify.  No presumption of guilt may be raised, and no inference of any kind may be drawn, from the fact that the Defendant did not testify.

The punishment provided by law for the crimes charges is for the court to decide.  You may not consider punishment in deciding whether the government has proved its case against the Defendant beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced that the Defendant is guilty.  It is not required that the government prove guilt beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense and is not based on pure speculation.  It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.

If after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the Defendant is guilty, it is your duty to find the Defendant not guilty.  On the other hand, if after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt that the Defendant is guilty, it is your duty to find the Defendant guilty.

When you begin your deliberations, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict, whether guilty or not guilty, must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Appendix B - 42**

A verdict form has been prepared for you and will be given to you to take to the jury room.

After you have reached unanimous agreement on a verdict, your foreperson will fill in the form, sign it and date it, and advise the bailiff that you are ready to return to the courtroom.

**Appendix B - 43**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing, or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, on the question of the guilt of the Defendant, until after you have reached a unanimous verdict or have been discharged.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 13-24-BU-SEH |
| Plaintiff, | |
| v. | **VERDICT** |
| JESUS PIMENTEL-LOPEZ, | |
| Defendant. | |

1.     We, the Jury in the above entitled cause, unanimously find beyond a

reasonable doubt the Defendant, Jesus Pimentel-Lopez:

NOT GUILTY          _____

GUILTY               _____

of conspiracy to possess controlled substances with the intent to distribute

methamphetamine, as charged in Count I of the Indictment.

**Appendix B - 45**

**If you find Jesus Pimentel-Lopez not guilty as to Count I, do not answer Question 1a.  Proceed directly to Question 2.  If you find Jesus Pimentel-Lopez guilty as to Count I, please answer Question 1a.**

1a.      Having found Jesus Pimentel-Lopez guilty of the charge in Count I of the Indictment, we unanimously find beyond a reasonable doubt the amount of a substance containing a detectable amount of methamphetamine attributable to Jesus Pimentel-Lopez to be:

_____    Less than 50 grams of a substance containing a detectable amount of methamphetamine.

_____    50 grams or more, but less than 500 grams, of a substance containing a detectable amount of methamphetamine.

_____    500 grams or more of a substance containing a detectable amount of methamphetamine.

2.      We, the Jury in the above entitled cause, unanimously find beyond a reasonable doubt the Defendant, Jesus Pimentel-Lopez:

_____    Not Guilty

_____    Guilty

of possession of methamphetamine with the intent to distribute, as charged in Count II of the Indictment.

**Appendix B - 46**

**If you find Jesus Pimentel-Lopez not guilty as to Count II, do not answer Question 2a.  If you find Jesus Pimentel-Lopez guilty as to Count II, please answer Question 2a.**

2a.     Having found Jesus Pimentel-Lopez guilty of the charge in Count II of the Indictment, we unanimously find beyond a reasonable doubt the quantity of methamphetamine possessed with intent to distribute to be:

_____     Less than 50 grams of a substance containing a detectable amount of methamphetamine.

_____     50 grams or more, but less than 500 grams, of a substance containing a detectable amount of methamphetamine.

_____     500 grams or more of a substance containing a detectable amount of methamphetamine.

**Have your foreperson sign and date the Verdict and advise the bailiff that you are ready to return to the courtroom.**

DATED this _____ day of June, 2014.


_____
FOREPERSON


3

**Appendix B - 47**

## 9.16  DETERMINING AMOUNT OF CONTROLLED SUBSTANCE

If you find the defendant guilty of the charge in [Count _____ of] the indictment, you are then to determine whether the government proved beyond a reasonable doubt that the amount of [*specify controlled substance*] equaled or exceeded [certain weights] [*insert specific threshold weight*].  Your determination of weight must not include the weight of any packaging material. Your decision as to  weight must be unanimous.

The government does not have to prove that the defendant knew the quantity of [*specify controlled substance*].

### Comment

When a drug conspiracy is charged, the jury may infer the agreed upon drug amount based on the conduct of the conspirators, but may not speculate as to the amount.  *See United States v. Narvarrette-Aguilar*, 813 F.3d 785, 794 (9th Cir.2015)  ("Express agreement is not required; rather, agreement may be inferred from conduct.")

While quantity and drug type are not elements of controlled substance offenses, a jury must determine those facts before a sentencing enhancement based upon drug type or quantity can be applied.  The Ninth Circuit has held, however, that the Government need not prove that a defendant knew either the controlled substance type or quantity in order for the enhancement to apply.  *United States v. Jefferson*, 791 F.3d 1013, 1019 (9th Cir. 2015); *but see United States v. Hunt*, 656 F.3d 906 (9th Cir.2011) (discussing effect on sentencing of knowledge of type of drug in attempted possession with intent to distribute case).  If the charged controlled substances are not in evidence, the court should only allow the jury to use comparison drugs that are from the defendant's activity or a conspiracy in which the defendant was involved.  *United States v. Lemus*, 815 F.3d 583, 591 (9th Cir. 2016) (stating that purity of controlled substances not connected to defendant could not be used to estimate purity of defendant's drugs).

When it is necessary to determine an amount of controlled substance, use this instruction with Instruction 9.15 (Controlled Substance–Possession with Intent to Distribute).  The following verdict form might be considered in such a circumstance, using the item for the substance in question:

### SUGGESTED VERDICT FORM

1.  We, the Jury, find the defendant [*name*] NOT GUILTY or GUILTY (circle one) as charged in [Count ___ of] the indictment.

If you find the defendant not guilty, do not consider paragraph 2 below, and your presiding juror should sign and date the form.  If you find the defendant guilty as charged, proceed to paragraph 2 below.

446

**Appendix C - 1**

2.  We, the Jury, having found the defendant guilty of the offense charged in [Count _____ of] the indictment, further unanimously find that [he] [she] [[distributed] [possessed with intent to distribute] [conspired to possess with intent to distribute]] [*specify controlled substance*] in the amount shown (place an X in the appropriate box):

[Marijuana–

| | | | | |
|---|---|---|---|---|
| (i) | Weighing 1000 kilograms or more | [   ] |
| (ii) | Weighing at least 100 kilograms but less than 1000 kilograms | [   ] |
| (iii) | Weighing less than 100 kilograms | [   ]] |

[Cocaine–

| | | | |
|---|---|---|---|
| (i) | Weighing 5 kilograms or more | [   ] |
| (ii) | Weighing at least 500 grams but less than 5 kilograms | [   ] |
| (iii) | Weighing less than 500 grams | [   ]] |

[Cocaine base ("crack" cocaine)--

| | | | |
|---|---|---|---|
| (i) | Weighing 50 grams or more | [   ] |
| (ii) | Weighing at least 5 grams but less than 50 grams | [   ] |
| (iii) | Weighing less than 5 grams | [   ]] |

[A mixture and/or substance with a detectible amount of Methamphetamine–

| | | | |
|---|---|---|---|
| (i) | Weighing 500 grams or more | [   ] |
| (ii) | Weighing at least 50 grams but less than 500 grams | [   ] |
| (iii) | Weighing less than 50 grams | [   ]] |

[Pure Methamphetamine–

| | | | |
|---|---|---|---|
| (i) | Weighing 50 grams or more | [   ] |
| (ii) | Weighing at least 5 grams but less than 50 grams | [   ] |
| (iii) | Weighing less than 5 grams | [   ]] |

DATED:_____                          _____

                                                   PRESIDING JUROR

*Approved 6/2016*

447

**Appendix C - 2**